# Pleasonton's Appeal.

1. A testator by his will bequeathed to his sister, his niece and his niece's husband, certain annuities. He also bequeathed to his niece annuities for the maintenance and education of her children till they attained majority, and on their attaining majority bequeathed to each of them certain annuities until his estate should be divided. After the death of his sister, his niece and her husband, and so soon as the youngest surviving child of his said niece should attain majority (and not before), testator directed his estate to be divided among the then surviving children of his said niece, and the children or lawful issue of any of them that might then be dead. *Held*, that testator intended to postpone the period for distributing his estate until the death of the last of the three annuitants, his sister, his niece and his niece's husband, and that the interest of each of said niece's children was contingent upon their outliving said event, and that the children or issue of said children took on a like contingency.

2. Where the gift of a legacy is, by a testator, postponed to a future time, but in the interim interest, either by way of maintenance or otherwise, is given to the legatee, as a general rule the legacy is deemed to vest at the death of the testator. Where, however, the gift of interest or maintenance is distinct, and the direction is to pay or transfer the principal sum at the specified age or upon the condition named, the legacy is contingent.

3. Where, in such case, the gift, by way of maintenance, is in the shape of an annuity for the life of the legatee, the legacy is to be deemed contingent.

4. A trustee of real estate who, in pursuit of a bona fide policy adopted by him for the management of the trust, demands such large rentals that he is unable to procure tenants, is not liable to be surcharged in the amount of income he might have received had he adopted another course. A trustee can never be surcharged for a loss arising from mere error of judgment and from no willful default.

January 16th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from a decree of the Orphans' Court of *Philadelphia county :* Of January Term 1882 No. 67.

This was an appeal by Gertrude Pleasonton, administratrix of Augustus Pleasonton, deceased, from a decree of the said court, dismissing exceptions to, and conforming the adjudications of the judge auditing the account of Augustus J. Pleasonton, Chapman Biddle and Robert Toland, trustees under the last will and testament of Joseph Dugan, deceased.

The facts of the case, as they appeared on the audit before HANNA, P. J., were as follows :—Joseph Dugan, the testator, died May 15th 1845, having first made his last will and testament bearing date September 12th 1837. It was duly admitted to probate on May 17th 1845. By this will testator bequeathed, inter alia, to his niece, Caroline Pleasonton, wife of Augustus J. Pleasonton, an annuity of $4,000, to be increased to $8,000 if she survived testator's sister, Ann Dugan. He also bequeathed to his said niece the sum of $500 per annum for each of her children who should be twelve years old at the time of testator's death, or should afterwards attain that age, for their clothing and education. And upon reaching the age of twenty-one years he bequeathed to each of said children an annuity of $1,000 " to be continued until the period hereinafter appointed for the division of my estate, unless sooner determined by the death of such child." Testator further bequeathed an annuity of $2,000 to his niece's husband Augustus J. Pleasonton, to be increased to $5,000 if he survived his wife.

After the legacies and annuities mentioned, testator gave and devised his real and personal estate unto his executors as trustees, in trust : " After the death of my sister, Ann Dugan, and of my niece, Caroline Pleasonton, and of my niece's husband, Augustus James Pleasonton, and so soon as the youngest surviving child of my said niece Caroline, shall attain twenty-one years of age (and not before), to divide the personal property with all its accumulations and to make partition of all the real estate in equal parts and shares, share and share alike, to and among the then surviving children of my said niece, Caroline, and the

children or lawful issue of any child of my said niece, who may then be dead, having left children or lawful issue, him or her surviving; such children or lawful issue of a deceased child, to take among them the same share (neither more nor less) and interest which their parent would have taken if then alive. And if my niece, Caroline, shall leave no children her surviving, or if her children who do survive her shall all die before the age of twenty-one years, and leaving no children nor lawful issue them surviving, then in trust to divide my said estate, real and personal, in equal shares, share and share alike, between my grand-niece, Ann Eck, and my grand-nephew, Joseph Eck ; and if either of them should be dead, leaving lawful issue, such lawful issue to take among them the share of the deceased parent; but if no such lawful issue, then the whole to go to the survivors or the lawful issue of such survivor."

Testator appointed as his executors Augustus J. Pleasonton, Clement C. Biddle and Edward C. Dale. Testator's sister, Ann Dugan, died before him. Caroline Pleasonton, testator's niece, died November 25th 1855. At the time of said niece's death she had living six children, Anna Josephine, Antoinette, Augustus, Alfred, Francis S. and Edward Rodney. The last named, being the youngest of the six, attained his majority on November 21st 1876. The accountants, Chapman Biddle and Robert Toland, were substituted trustees in the place of Clement C. Biddle and Edward C. Dale. It appeared, however, that Augustus J. Pleasonton had alone performed the active duties of the trust from the time of testator's death.

The most productive part of the testator's estate consisted of thirty-six houses situated at and near the intersection of Walnut and Thirteenth streets in the city of Philadelphia.

The first account of the trustees embracing the income from those houses, was filed December 26th 1854, and was referred to Peter McCall, Esq. He found that the estate had been very judiciously managed by the trustees, and that, by their careful management and the rise in the value of city property, the rental of the estate had been considerably increased since the time of the testator's death. This report was confirmed by the court July 20th 1855.

On May 24th 1873, a second account was filed, which was also referred to Mr. McCall, who again reported that there had been a considerable increase in the rental, which he thought was no doubt largely due to the rise in the value of real estate, but was also in no small degree to be attributed to the skill and judicious management of the trustees.

The present account was filed November 26th 1876, and covered the period from the filing of the last account. It appeared that a number of the houses had in the interim remained

vacant, and were of course unproductive owing to the high rents demanded for them by Augustus J. Pleasonton. The children of said accountant claimed, that he should be surcharged in the amount of the rents which he might have realized therefrom. Upon this point the auditing judge reported as follows :—

" It also appeared that a number of the houses belonging to the estate are now and have been vacant, for periods of time varying from months to years, yet the evidence showed this was the result not of carelessness or supine negligence, on the part of the trustees or their agent, but of the policy adopted by them for the management of the trust from its inception, and which they, from their experience and according to their best judgment, believed, under all the circumstances, beneficial and advantageous to the estate. The wisdom of the plan pursued by the trustees may be doubted, and it is clear it does not meet the approval of the parties entitled to the estate in remainder, nor harmonize with the opinions of experts in real estate business, who were examined as witnesses. Yet that is not now the question to be determined. Much of the testimony would be very material, if an application had been made to remove the trustees ; but the effort now is to surcharge them personally for an alleged neglect and default, thus presenting an entirely different question, and to be decided by principles not applicable to the former case. While it may be thought that the trustees have adopted a mistaken policy, and a different mode of renting the houses of the estate would have produced larger results, yet that is but a conjecture. We are now dealing with facts developed by the evidence, and these show that the course of the trustees, not complained of prior to filing of the present account, has been productive of increased revenue ; that they have kept the properties in repair, paid all taxes, water rents, etc., collected the rents, paid the annuities, and promptly invested surplus income ; one of the trustees, Augustus J. Pleasonton, bestowing his entire time and attention to the business of the estate, personally collecting the rents and keeping its accounts with care and exactness.

After a careful examination of the entire evidence, the auditing judge is unable to discover any supine negligence and mismanagement on the part of the trustees, or either of them, as would justify the surcharge sought to be imposed upon them."

The children of Augustus J. Pleasonton further contended that the youngest of them having attained majority, the corpus of the estate, together with the accumulated income, should be distributed to them. The auditing judge was, however, of opinion that testator's intent was that such distribution should

not take place until the death of Augustus J. Pleasonton, the last annuitant, and found accordingly.

Exceptions were filed to the adjudication by the children of Augustus J. Pleasonton, which were dismissed by the court, and a decree entered confirming the adjudication. Gertrude Pleasanton, administratrix of Angustus Pleasanton, one of said children who had in the meantime died, thereupon took this appeal, assigning for error the decree of the court dismissing, inter alia, the exceptions to those parts of the adjudication refusing to surcharge the accountant with possible rentals, and refusing to distribute the estate among the children of the accountant.

*John J. Ridgway, Jr.*, for appellant.—The evidence showed that the rents demanded by the accountant were so exorbitant, and his continuance in the policy of demanding them was so persistent and so disastrous, that he ought to be surcharged.

The intention of the testator clearly was to vest the estates in the residuary legatees and devisees on the youngest of them coming of age, and not to render such estates contingent on outliving the last annuitant : Womrath *v.* McCormick, 1 P. F. Smith 504 ; Manderson *v.* Lukens, 11 Harris 31 ; Fassitt's Estate, 2 W. N. C. 572 ; Bushong's Estate, 33 Leg. Int. 412 ; Provenchere's Appeal, 17 P. F. Smith 463 ; Crawford *v.* Ford, 7 W. N. C. 532 ; Letchworth's Appeal, 6 Casey 175. The remainder over to the Ecks, in the next clause of the will, is upon a contingency which implies such vesting, and its direction to divide the estate among them, upon the death of all Caroline's children before reaching majority without issue, demonstrates clearly the intention not to postpone the division until the death of the last annuitant ; for if the contrary construction be the proper one, then, if all the children having attained twenty-one years die without issue before the death of General Pleasonton, there will be an intestacy, for no one will then be in existence entitled to take, which could not have been the intention of the testator : Hawkins on Wills, *227, 240 ; Randal *v.* Doe, 5 Dow 202 ; Bull *v.* Pritchard, 5 Hare 571 ; Rivers *v.* Tripp, 4 Rich. Eq. 576 ; Welles *v.* Ritter, 3 Wharton 208 ; Robert's Appeal, 9 P. F. Smith 70.

There are two inconsistent periods of time referred to in the will for the division of the estate; first, after the death of all the annuitants ; and second, as soon as the youngest surviving child of his niece shall attain twenty-one years of age. In such cases the estate vests upon the happening of the first : Andrew *v.* Andrew, L. R. 1 Ch. Div. 410 ; Hodgson *v.* Gemmill, 5 Rawle 99 ; King *v.* Wilkins, Gilbert's Eq. 27 ; Betty Smith's Trusts, L. R. 1 Eq. 78.

The estate being vested, even though the principal be not

divisible, the present income is payable to those in whom it is vested : Whitter *v.* Bremridge, L. R. 2 Eq. 736 ; Phipps *v.* Ackers, 9 Cl. & Fin. 583 ; Snow *v.* Poulden, 1 Keen 186 ; Montgomerie *v.* Woodley, 5 Vesey 522 ; Blease *v.* Burgh, 2 Beav. 221 ; Josselyn *v.* Josselyn, 9 Simons 63 ; Masden's Estate, 4 Whart. 428.

The will expressly provides that there shall be a division " so soon as " the youngest surviving child attains majority. If the children must wait until the death of the last annuitant there can be no division " so soon as " the youngest child attains majority. It is clearly evident that the testator anticipated the death of all the annuitants before this event would happen, and his desire, as expressed by the "not before" inserted, was that no division should take place until then : Doe d. Hunt *v.* Moore, 14 East 601 ; Archer *v.* Jegon, 8 Simons 447 ; Re Wollaston's Settlements, 27 Beav. 642 ; Benyon *v.* Madison, 2 Bro. Ch. C. 75 ; Olney *v.* Bates, 3 Dr. 319.

No intent is shown to delay a division beyond the attainment of majority of the youngest child with any view to the benefiting them. The only reason for thus delaying, is the existence of the annuities. It is well settled that where postponement is for such a reason, the vesting of the estate is not to be deferred : Packhan *v.* Gregory, 4 Hare 398 ; Curtis *v.* Luken, 5 Beav. 156.

*George W. Biddle* and *A. Sydney Biddle* (with whom was *Eli K. Price*), for the appellee.—The accountant, having acted in perfect good faith in the management of the estate, and according to the best of his judgment, cannot be held liable: Dilworth *v.* Sinderling, 1 Binn. 494 ; Zebach *v.* Smith, 3 Binn. 73 ; Knight *v.* Lord Plimouth, 3 Atk. 480 ; Hammon *v.* Cottle, 6 S. & R. 290 ; Gelbach's Appeal, 8 S. & R. 205 ; Bonsall's Appeal, 1 Rawle 266 ; Bouman's Appeal, 3 Watts 369 ; Konigmacher *v.* Kimmel, 1 P. & W. 207 ; Pimm *v.* Downing, 11 S. & R. 67 ; Johnson's Appeal, 12 S. & R. 317 ; Stem's Appeal, 5 Whart. 472 ; McNair's Appeal, 4 Rawle 148 ; Cahoun's Estate, 6 Watts 185 ; Twaddell's Appeal, 5 Barr 18 ; Moor's Appeal, 10 Barr. 435 ; Springer's Estate, 1 Smith 342 ; Neff's Appeal, 7 Smith 91 ; Pleasant's Appeal, 27 Smith 356. It is clear that the period of distribution is postponed until the death of the last of the testator's annuitants, and also until the arrival of the youngest of said distributees to the age of twenty one years. The share of each distributee is contingent on his surviving these events : Abbott *v.* Jenkins, 10 S. & R. 296 ; Seibert's Appeal, 1 Harris 501 ; McBride *v.* Smyth, 4 P. & F. Smith 245 ; Morris's Estate, 2 W. N. C. 522 ; Nicholson *v.* Bettle, 7 P. F. Smith 386 ; Delbert's Appeal, 2 Norris 462 ; Harris *v.* McElroy, 9 Wright 216 ; List *v.* Rodney, 2 Norris

483; Moore *v.* Smith, 9 Watts 403; Gee *v.* Liddell, L. R. 2 Eq. 341.

Such is the import of the phrases employed: Stapleton *v.* Cheales, Prec. in Ch. 317; Leake *v.* Robinson, 2 Merivale 363; Hanson *v.* Graham, 6 Ves. 239; Bull *v.* Prichard, 5 Hare 567.

No distribution should therefore now be made.

Chief Justice SHARSWOOD delivered the opinion of the Court, January 30th 1882.

We have no doubt that under the will of Joseph Dugan the period of final partition and distribution of his estate was postponed until the death of Gen. Pleasonton, and was not to take place upon the arrival of the youngest child of his niece, Mrs. Pleasonton, at full age. The words of the clause providing for such partition and distribution are distinct, and unsusceptible of any other construction. " After the death of my sister, Ann Dugan, and of my niece, Caroline Pleasonton, and of my niece's husband, Augustus James Pleasonton, and so soon as the youngest surviving child of my said niece, Caroline, shall attain twenty-one years of age (and not before)," then to make distribution and partition " to and among the then surviving children of my said niece Caroline and the children or lawful issue of any child of my said niece." The interest of Augustus Pleasonton, one of these children, of whose estate the appellant is administratrix, was contingent upon his surviving Gen. Pleasonton. His children or issue take upon the same contingency. There is no clause or provision in the will, from which it can be inferred that it was intended that the interest in the meantime should vest. The annuities to these children were for life. It was shown in Provenchere's Appeal, 17 P. F. Smith 463, that, as was the case there, where interest, either by way of maintenance or otherwise, is given to the legatee in the meantime, the legacy, notwithstanding the gift itself be postponed, vests on the death of the testator, yet there is a recognized exception in England, that when the gift of interest or maintenance is distinct, and the direction is to pay or transfer the principal sum at the specified age or upon the condition named, the legacy is contingent; and Chief Justice GIBSON, in King *v.* King, 1 W. & S. 207, considered a bequest of dividends as a clear exception to the general rule. An annuity for the life of the legatee is a still clearer exception. The learned counsel for the appellant with all his research was able to produce no case which would rule that anything contained in this will would show that the legacy here was vested, either on the death of the testator or the coming of age of the youngest of the children of Caroline Pleasonton. Until it was ascertained by the death of Gen. Pleasonton, who were the survivors then living, it could not be known to whom it would ultimately

belong, and of course it was contingent. It may be that if the testator had thought of what has occurred, he would have made a suitable provision for the maintenance and education of the children or issue of a child of his niece dying before the period of distribution. But he has not done so, and we have no power to supply the gap by making a will for him.

It follows, necessarily, that the appellant has no standing in this court, and we might dismiss this appeal at once, on that ground, without any opinion upon the question of surcharge. But we think it better to consider that question without waiting for the substitution of the guardian of the minor children of Augustus Pleasonton. An amendment to that end would be allowed, of course, even at this stage of the proceedings. Augustus Pleasonton in his lifetime filed exceptions to the confirmation of the adjudication of the auditing judge on this ground, and it does not appear by the record that they were withdrawn, though it is stated in the opinion on the final decree that they were abandoned on the oral argument. The infants are not bound by such an abandonment. We think it most advisable to dispose of the whole case. The mode in which the surviving trustee managed the estate was certainly very peculiar, and it seems that if the ordinary mode of managing the estate had been pursued, a large amount would have been added to the accumulations. Had an application been made to remove him as mismanaging the estate, and that were the question now before us, there would be strong reason for dismissing him. But the question of surcharge is different. It is plain that the trustee acted on an honest though perhaps mistaken opinion. He faithfully accounts for every dollar he has received. Having a very large number of houses belonging to the estate under his care, he thought it the wisest policy to keep up the rents at a high figure, even though the result might be that many of the houses would be vacant for a greater or less period, that the gain on the whole would exceed the loss on the few. Some such policy has often been pursued by large ship-owners, like Mr. Girard, who very rarely, as it is said, insured his vessels, as he saved money by being his own insurer. It is clear that such a principle could never have even an appearance of reason unless where a trust estate was composed of a very large number of houses, as was this case. A trustee can never be surcharged for a loss arising from a mere error of judgment, and for no willful default. The trustee appears to have acted throughout under the advice of counsel, and his first and second account having been referred to Mr. McCall, as auditor, he reported that the increase which had taken place in the income of the estate while no doubt largely due to the rise in value of real estate

[Auer *v.* Penn.]

" was also in no small degree to be attributed to the just and judicious management of the trustees."

> ·Decree affirmed and appeal dismissed, the costs of this appeal to be paid by the estate, including the cost of the appellant's paper book and one hundred dollars to her counsel.